UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRUCE J. HALPERN,

                Plaintiff,

     v.                                        **DECISION AND ORDER**
                                                   12-CV-407S

BLUE CROSS / BLUE SHIELD OF
WESTERN NEW YORK,

                Defendant.

## I. INTRODUCTION

Plaintiff Bruce J. Halpern ("Plaintiff") commenced this action for breach of contract against Blue Cross / Blue Shield of Western New York, also known as HealthNow New York, Inc., ("HealthNow" or "Defendant") in state court following the denial of reimbursement claims under a group health benefits plan. Because the reimbursement claims were related to an employee benefit plan, HealthNow removed the matter to this Court on May 4, 2012, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (e)(1). Currently pending before this Court are the parties' cross-motions for summary judgment. For the following reasons, Defendant's motion is granted, and Plaintiff's cross-motion is denied.

## II. BACKGROUND

### A. Facts

The following facts are undisputed unless otherwise noted.

During the period at issue in this case, Plaintiff was covered under a Traditional Blue point-of-service health benefit plan ("the Plan") issued by HealthNow.

In mid-December, 2009, Plaintiff's dependant son B.H. entered Telos Residential Facility ("Telos") for teenage boys in Orem, Utah. Telos describes itself as a "unique, clinically sophisticated, relationship-based treatment center for teenage boys," and specializes in the treatment of problems such as anxiety, depression, substance abuse, and learning differences.  (Def. Ex. Q.) The facility provides therapy, academics, and off-campus activities. (Id.)

Upon admission to the Telos Residental Treatment Center, B.H. was evaluated by an adolescent psychiatrist who diagnosed B.H. with mood disorder, not otherwise specified; anxiety disorder, not otherwise specified; ADHD; cognitive disorder, not otherwise specified with social delays, executive functioning delays, rigid thinking, and a possible non-verbal learning disability disorder. (Pl. Aff. ¶14 & Pl. Ex. E.) A Master Treatment Plan was then developed for B.H. (Pl. Aff. ¶¶15-20 & Pl. Exs. E-I.)

B.H. left Telos on April 12 or April 15, 2011, the last date for which Plaintiff claims an entitlement of benefits. HealthNow reimbursed Plaintiff for B.H.'s stay at Telos from December 2009 through July 2010.

In a letter dated July 6, 2010, Health Integrated, which provides mental health utilization management on behalf of HealthNow, informed Plaintiff that B.H. was not entitled to residential treatment benefits under the Plan.  HealthNow nonetheless reimbursed Plaintiff for B.H.'s stay for the month of July, but denied Plaintiff's reimbursement claims for B.H.'s stay at Telos from August 2010 through November of 2010. In a letter dated November 11, 2010, Health Integrated again advised Plaintiff that B.H. did not have residential benefits, and Plaintiff's reimbursement claims for December 2010, through January 2011 were subsequently denied by HealthNow.

Plaintiff filed a grievance dated December 23, 2010, arguing that identical prior treatment had previously been routinely reimbursed, and there had been no finding that such treatment was not medically necessary. (Def. Ex. K.) On January 18, 2011, Plaintiff was advised by letter that the decision to deny Plaintiff benefits would be upheld, that any past reimbursement had been made in error, and that Telos did not qualify as a hospital as defined by the Plan, a definition that includes any "hospital" as defined by New York Mental Hygiene Law § 1.03(10). (Def. Ex. L.)

On April 4, 2011, Plaintiff filed an administrative appeal.  Plaintiff argued that the denial of his claims was inappropriate because Telos was a "residential treatment facility for children and youth" under subdivision (33) of § 1.03 of the Mental Hygiene Law and therefore qualified as a "hospital" under subdivision (10) of § 1.03, requiring coverage under the Plan. (Def. Ex. M.)

The administrative appeal was denied by letter dated May 2, 2011, which stated that inpatient residential mental health treatment was not a covered benefit of Plaintiff's plan. The letter stated that, although acute hospital care or rehabilitative care were covered benefits, residential treatments failed to qualify under either benefit provision as they were "more loosely structured and . . .  generally more vocational in nature." (Def Ex. N.) The grievance procedures information and instruction sheet Plaintiff received for his claim denials provided that Plaintiff had the right to bring a civil action pursuant to ERISA should his claim for benefits be denied following an appeal. (Pl. Aff. ¶ 22 & Pl. Ex. J.)

Plaintiff then commenced this action on April 23, 2012, by filing a summons and complaint in New York State Supreme Court, Erie County.  Defendant removed the matter to this Court on May 4, 2012.

3

### III. DISCUSSION

In its motion, Defendant contends that it is entitled to summary judgment because: (1) Plaintiff's claim is time-barred; and (2) Plaintiff's claim relates to a benefit that is not covered under the Plan. (Def. Mem. 11-24.) Plaintiff opposes the Defendant's motion on the grounds that his claim is timely.  Alternatively, Plaintiff asserts that a fact issue exists as to whether Plaintiff was properly notified of the limitations period contained in the Plan. Plaintiff also cross-moves for summary judgment on the basis that the Plan Administrator's decision to deny benefits was arbitrary and capricious as a matter of law because B.H.'s treatment at Telos was a covered benefit under the Plan. (Pl. Mem. 9-25.)

The standard for the grant of summary judgment pursuant to Federal Rule of Civil Procedure 56 is well-established. "A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).  Where, as here, both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, 249 F.3d 115, 121 (2d Cir. 2001). Further, in denial-of-benefits cases such as this one, the applicable summary judgment standard "must also be viewed in conjunction with the standard of review of administrative actions under the ERISA guidelines." Diagnostic Med. Assoc., M.D., P.C. v. Guardian Life Ins. Co. of Am., 157 F. Supp. 2d 292, 297 (S.D.N.Y. 2001).

### A.    Limitations Periods under ERISA

As a threshold matter, this Court must determine whether Plaintiff's suit is timely.

Defendant argues that Plaintiff's suit is time-barred under the Plan's contractual limitations period because Plaintiff filed his ERISA suit over one year from the last date for which he claimed benefits. (Def. Mem. 11-16.) Plaintiff counters that the Plan's one-year period is unenforceable because: (1) it violates the statutory minimum for limitations periods applicable to insurance benefit actions under New York Insurance Law; (2) a one-year limitations period in group health plans covered by ERISA is unreasonable; and (3) Defendant failed to effectively notify Plaintiff of shortened limitations period. (Pl. Mem. 9-19.)

Generally, because ERISA contains no statute of limitations for actions brought under 29 U.S.C. § 1132, such claims are subject to the most analogous state statute of limitations. Guilbert v. Gardner, 480 F.3d 140, 148-49 (2d Cir. 2007); Miles v. N.Y.S. Teamsters, 698 F.2d 593, 598 (2d Cir. 1983), *cert denied*, 464 U.S. 829 (1983). In New York, courts typically apply the six-year limitations period for contract actions set forth in N.Y. Civil Practice Law and Rules ("CPLR") § 213(2). See, e.g., Burke v. Price WaterHouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 78 (2d Cir. 2009); Bilello v. JPMorgan Chase Ret. Plan, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009). This limitations period may be shortened, however, where the parties memorialize such agreement in writing. Burke, 572 F.3d at 78 (citing CPLR § 201). Indeed, absent a controlling contrary statute, enforcement of contractual limitations provisions as written is especially appropriate in ERISA context. see Heimeshoff v. Hartford Life & Acc. Ins. Co., – U.S. –, 134 S. Ct. 604, 611-12 187 L. Ed. 2d 529 (2013) (a plan's limitation provision must be enforced unless unreasonably short or contrary to a controlling statute).

Here, the Plan language provides that "You must start any lawsuit against us under

this Plan within one year from the date you received the service for which you want us to pay." (Def. Exs. D at HN00072; E at HN00179; F at HN00303.)  Plaintiff does not dispute that this action was not commenced within this contractual limitations period.  He argues that his suit is nonetheless timely because the Plan's limitation period violates Section 3221 of the New York Insurance Law, which prohibits group health insurance policies from containing a limitations period of less than two years. (Pl. Mem. 9-17.)

New York Insurance Law § 3221(a) provides, in relevant part:

> No policy of group or blanket accident and health insurance shall . . . be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which in the opinion of the superintendent are more favorable to the holders of such certificates or not less favorable to the holders of such certificates and more favorable to policyholders.

The required provisions include a minimum statute of limitations, specifically:

> That no action at law or in equity shall be brought to recover on the policy prior to the expiration of sixty days after proof of loss has been filed in accordance with the requirements of the policy and that no such action shall be brought after the expiration of <u>two years</u> following the time such proof of loss is required by the policy.

N.Y. Ins. Law § 3221(a)(14) (emphasis added).

As Plaintiff argues, courts have consistently recognized that contractual provisions that fail to meet the minimum requirements of New York Insurance Law are unenforceable as written.  See <u>Terry v. UNUM Life Ins. Co. of Am.</u>, 394 F.3d 108, 110 (2d Cir. 2005); <u>1303 Webster Ave. Realty Corp. v. Great Am. Surplus Lines Ins. Co.</u>, 63 N.Y.2d 227, 231, 471 N.E.2d 135 (1984) (1984); <u>cf.</u> <u>Burke</u>, 572 F.3d at 76 n.1 (finding plan's three-year limitations period permissible because it was "more favorable" than  N.Y. Ins. L. § 3221(a)(14) requires.); <u>see also</u> <u>Prabhakar v. Life Ins. Co. of N. Am.</u>, – F. Supp. 2d –, 2013

6

WL 4458728, *12 (E.D.N.Y.  Aug. 16, 2013) (noting that "under New York law, a group policy . . . cannot contain a limitations period shorter than two years after proof of loss is required by the policy . . . ."); see also Quaker Hills, LLC v. Pacific Indem. Co., 728 F.3d 171, 180-81 (2d Cir. 2013) (collecting cases).  In such cases, the policy is read as if it conformed with the minimum statutory requirement. Terry, 394 F.3d at 110; 1303 Webster Ave. Realty Corp., 63 N.Y.2d at 231.

Defendant responds that the instant suit arises under ERISA, therefore any "provisions of state law purportedly restricting the freedom of contracting parties to establish a shorter limitations period are not controlling." (Def. Reply Mem.  3.)  However, with the exception of self-funded plans, which are deemed not to be insurance companies for the purposes of state insurance law, ERISA's preemption provision contains a categorical exception for "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(a),(b)(2); FMC Corp. v. Holliday, 498 U.S. 52, 61, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990) (state may indirectly regulate insured employee benefit plans through regulation of insurer and insurer's contracts).

Thus, the application of New York Insurance Law § 3221 here is not a question of borrowing a limitations period from state law.  (See Def. Reply Mem. 4 n.1.)  Instead, because the policy provision requirements mandated by this section are "clearly and obviously directed toward the insurance industry," this statute is one regulating  insurance and is therefore saved from preemption. Macro v. Independent Health Ass'n, 180 F. Supp. 2d 427, 433-36 (W.D.N.Y. 2001) (finding that § 1144's savings clause applied to § 3221 after application of the "common sense" test and McCarran-Ferguson factors);  Trapanotto v. Aetna Life Ins. Co., No. 95 CIV. 10704, 1996 WL 417519, *7 (S.D.N.Y. July 25, 1996)

7

(same); see also UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 375, 119 S. Ct. 1380, 143 L. Ed. 2d 462 (1999) (reaffirming that state laws mandating certain insurance contract terms are saved from preemption).   There is also nothing in the record contradicting Plaintiff's assertion that the Plan is insured and not self-funded. (See Pl. Reply Mem. 2.)

Further, Defendant has not cited "any contrary case authority suggesting that laws regulating the terms of insurance contracts should not be understood as laws that regulate insurance." Metropolitan Life Co. v. Massachusetts, 471 U.S. 724, 744, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985); Macro, 180 F. Supp. 2d at 436.   Although Defendant relies on Buffalo Anesthesia Assoc., P.C. v. Gang, in that case the plaintiff did not contest the one-year contractual limitation period, but instead argued that his continuous treatment rendered part of his claim timely. No. 05–CV–0204, 2009 WL 1449047 (W.D.N.Y. May 20, 2009) (counsel's affidavit at Docket No. 36).   Accordingly, the Court in that case did not consider either the application of § 3221 or the reasonableness of the contractual limitation.

Finally, Defendant contends that the Plan is consistent with New York Insurance Law § 3221 because it was approved by New York's Superintendent of Insurance. (Def. Reply Mem. 4; Def. Exs. X, Y.)   Defendant argues that, because the Superintendent is permitted to approve policies with provisions deviating from § 3221's specified requirements, the Plan at issue here does not run afoul of New York law.   However, a policy provision approved by the Superintendent nonetheless "cannot be enforced if it runs counter to the legislative intent or if it violates existing law." Burke v. First UNUM Life Ins. Co., 975 F. Supp. 310, 316 (S.D.N.Y. 1997) (internal quotation marks and citation omitted).

Here, the relevant portion of this statute provides:

8

> No policy of group or blanket accident and health insurance shall . . . be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which in the opinion of the superintendent are more favorable to the holders of such certificates or not less favorable to the holders of such certificates and more favorable to policyholders.

N.Y. Ins. L. § 3221(a) (emphasis added). Thus, "[a]lthough the wording of such policy provisions may, with the approval of the superintendent of insurance, differ from the statutory language, the substance of the policy provision may 'not [be] less favorable in any respect to the insured.' " Terry, 394 F.3d at 109 (considering similarly worded subsection in N.Y. Insurance Law § 3216(d)).

This Court therefore finds that New York Insurance Law § 3221 applies in the instant case, and the Plan must be read as conforming with this section's required minimum limitations period of "two years following the time such proof of loss is required by the policy." N.Y. Ins. L. § 3221(a)(14).  Plaintiff commenced the instant action in state court on April 23, 2012, accordingly all services from August 2010 to April 2011 for which Plaintiff now seeks reimbursement fall within the statutorily modified limitations period.[1]

**B.    Plaintiff's Entitlement to Reimbursement**

With respect to the merits, Plaintiff seeks payment on claims made for B.H.'s treatment at Telos from August 2010 through April 2011.  The Plan provides coverage for certain mental, nervous or emotional disorders or ailments under the following relevant terms:

---

[1]In light of this, there is no need for the Court to consider the distinction, if any, between the statute's commencement of the limitations period at the time "proof of loss is due" and the Policy's commencement of this period of "the date you received the service for which you want us to pay." (Def. Exs. D at HN00072; E at HN00179; F at HN00303.)

If you are confined as **an inpatient in a hospital as defined by subdivision ten of Section 1.03 of the New York Mental Hygiene Law,** we will provide coverage for up to aggregate of 20 days per person in each plan year[2] for Active Treatment of mental, nervous, or emotional disorders or ailments, if it is medically necessary in the judgment of a participating physician, and approved by our medical director under [either the in-network and out-of-network sections of the Policy]. Active Treatment means treatment furnished in conjunction with inpatient confinement for mental, nervous, or emotional disorders or ailments that meet such standards as shall be prescribed pursuant to the regulations of the Commissioner of Mental Hygiene.

(Def. Exs.  D at HN00015-16 (§ 3(9) (in-network)), HN00035 § 12(8) (out-of-network)); E at HN00121-22, HN00141 (same) (emphasis added).)

The parties agree that the primary issue in determining whether benefits were improperly denied is whether Telos is a hospital as defined by New York Hygiene Law § 1.03(10). This subdivision states:

"Hospital" means the in-patient services of a psychiatric center under the jurisdiction of the office of mental health or other psychiatric in-patient facility in the department, a psychiatric in-patient facility maintained by a political subdivision of the state for the care or treatment of the mentally ill, a ward, wing, unit, or other part of a hospital, as defined in article twenty-eight of the public health law, operated as a part of such hospital for the purpose of providing services for the mentally ill pursuant to an operating certificate issued by the commissioner of mental health, a comprehensive psychiatric emergency program which has been issued an operating certificate by such commissioner, or **other facility providing in-patient care or treatment of the mentally ill which has been issued an operating certificate by such commissioner**.

N.Y. Mental Hygiene Law § 1.03(10) (emphasis added).  Plaintiff does not dispute that Telos is not a hospital as defined by the criteria listed in this subdivision, but contends that subdivision 10 must be read in conjunction with subdivision 33, which expands the class of facilities that fall within the definition of "hospital." (Pl. Mem. 20.) This subdivision defines

---

[2]Neither party has raised the issue that Plaintiff's claims exceed this 20 day maximum.

a category of facilities known as Residential Treatment Facilities for Children and Youth

("RTFC"), which are:

> inpatient psychiatric facilit[ies] which provide[] active treatment under the direction of a physician for individuals who are under twenty-one years of age, provided that a person who, during the course of treatment, attains the age of twenty-one may continue to receive services in a residential treatment facility for children and youth until he or she reaches the age of twenty-two. The term "residential treatment facility for children and youth" does not apply to the children's psychiatric centers described in section 7.17 of this chapter or to facilities specifically licensed by the office of mental health as children's hospitals. **Residential treatment facilities for children and youth are a sub-class of the class of facilities defined to be "hospitals" in subdivision ten of this section**.

N.Y. Mental Hygiene Law § 1.03(33) (emphasis added).

Plaintiff contends that he is entitled to summary judgment because Telos is a RTFC,

and therefore, as a member of the sub-class, it necessarily falls within the larger class of

hospitals under subdivision 10. Defendant disputes this assertion, arguing that this sub-

class encompasses only those facilities that meet *both* subdivision 10's definition of

hospital and subdivision 33's RTFC definition.

In resolving this argument, the threshold question arises of the appropriate degree

of deference to be afforded Defendant's own interpretation of the Plan. Dobson v. Hartford

Life & Acc. Ins. Co., 518 F. Supp. 2d 365, 371 (D. Conn. 2007). Generally, "a denial of

benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard

unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan." Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where such discretionary authority is

present, a court "will not disturb the administrator's ultimate conclusion unless it is arbitrary

and capricious." Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)(internal quotation marks omitted); see Tocker v. Philip Morris Co. Inc., 470 F.3d 481, 487 (2d Cir. 2006).

Defendant argues that such discretionary authority has been conferred here, and therefore deference is warranted, because the Plan gives it "all the powers necessary or appropriate. . .to construe the Plan[ and] to determine all questions arising under this Plan." (Def. Mem. 9 (citing Ex. F at HN 00303).)  Defendant concedes that this language is found only in the version of the Plan in effect in 2009, but argues that later versions contain separate, individual provisions which nonetheless make clear that Defendant retained overall discretion with respect to benefit eligibility decisions. (Id. at 9-10.)

Even assuming that such discretion is conferred by all relevant versions of the Plan,[3] however, the initial question raised by the parties – whether a RTFC is a hospital as defined by Mental Hygiene Law § 1.03(10) – is one of statutory interpretation.  "When an eligibility determination by plan administrators turns on a question of law, courts have not hesitated to apply a de novo standard of review." Weil v. Ret. Plan Admin. Comm. of Terson Co., 913 F.2d 1045, 1048-49 (2d Cir. 1990), vacated in part on other grounds, 933 F.2d 106 (2d Cir. 1991); Dobson, 518 F. Supp. 2d at 371. Further, the Appeals Committee denied Plaintiff's appeal without expressly addressing subdivision 33 or Telos' status as a RTFC, stating instead that "residential treatment" was not considered either the acute hospital or rehabilitative care covered under the Plan. (Def. Ex. N.)  This Court cannot defer to a interpretation that was never expressly made or explained. See Strom v. Siegel

---

[3]A conclusion that this Court need not, and therefore does not, reach.

Fenchel & Peddy P.C. Profit Sharing Plan, 497 F.3d 234, 243 (2d Cir. 2007).

In considering the parties' statutory argument *de novo*, "[i]t is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." In re Venture Mortgage Fund, L.P., 282 F.3d 185, 188 (2d Cir. 2002) (quoting Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999)). "Meaning and effect should be given to all language of a statute. Words are not to be rejected as superfluous where it is practicable to give each a distinct and separate meaning." Rosner v. Metro. Prop. & Liab. Ins. Co., 729 N.Y.S.2d 658, 754 N.E.2d 760, 762 (2001); see Photopaint Tech. v. Smartlens Corp., 335 F.3d 152, 157 (2d Cir. 2003).

Here, the plain language of section 1.03, read in context, supports the conclusion that RTFCs fall within subdivision 10's definition of "hospital." Indeed, to hold otherwise would be to ignore the New York Legislature's express statement that such facilities are "a sub-class of the class of facilities defined to be 'hospitals' in subdivision ten." N.Y. Mental Health Law § 1.03(33). Contrary to Plaintiff's contention, however, subdivision 33 does not expand or provide an alternative definition of "hospital" that circumvents the state oversight requirements also found in subdivision 10.[4] (Pl's Mem of Law at 20.)

Plaintiff argues that "[i]f the facilities referred to in subdivision 33 would have qualified as hospitals under subdivision ten in any event, then the sentence [defining

---

[4]In any event, if subdivision 33 did provide a different, alternative definition for "hospital" than that intended by subdivision 10, as Plaintiff argues, then an RTFC is not a hospital "as defined by subdivision ten" as required by the plain language of the Plan. It would instead be a hospital defined exclusively by subdivision 33.

RTFCs as a subclass] serves no purpose; it is meaningless legislative chit-chat." (Pl. Mem. 20.)  This Court disagrees.  Subdivision 10 ends with a catch-all provision including any "other facility providing in-patient care or treatment of the mentally ill which has been issued an operating certificate by [the] commissioner [of mental health]." N.Y. Mental Hygiene Law § 1.03(10). To that end, a RTFC is an "inpatient psychiatric facility" providing active mental health treatment and, pursuant to § 31.02 of the Mental Hygiene Law, requires an operating certificate from the commissioner of mental health.  See N.Y. Mental Hygiene Law §§ 1.03(2), (33); 31.02(a)(4).  Thus, subdivision 33 merely defines an RTFC as one specific type of "other facility" that falls within subdivision 10's definition of hospital, but does not negate the operating certificate requirement.  Further, this separate definition is not meaningless but, as Defendant argues, allows for ease of reference with respect to the subsequent regulations and requirements specific to this subset of hospitals throughout New York's Mental Hygiene Law. See, e.g. N.Y. Mental Hygiene Law § 9.51 (admission and retention requirements for RTFCs); § 31.26 (commissioner's powers and responsibilities with respect to RTFCs).

Plaintiff further argues that the Plan cannot be read as incorporating state certification obligations because this would preclude coverage for any inpatient mental health treatment at a facility not part of the New York public mental health care system, a conclusion Plaintiff argues contradicts the Plan's coverage of "out-of-network" mental health care. (Pl. Reply Mem. 9-10.)  He also asserts that this interpretation is belied by Defendant's payment of B.H.'s prior treatment at the out of state Aspen facility and six months of treatment at Telos before issuing a denial. (Id. at 10.)

Resolution of this issue requires a shifting of focus from the statute to the Plan itself.

As with statutory interpretation, a court considering an ERISA plan must first look to its terms, interpreting and enforcing unambiguous language in accordance with its plain meaning. Gibbs ex rel. Estate of Gibbs v. CIGNA Corp., 440 F.3d 571, 578-79 (2d Cir. 2006) (construing an ERISA-regulated plan in accordance with federal common law); Strom, 487 F.3d at 244. " 'Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.' " Gibbs, 440 F.3d at 579 (quoting Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 149 (2d Cir. 1999)).   Whether contract language is ambiguous is a question of law for a court to resolve by reference to the contract alone. Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002).

As noted above, the relevant Plan provision reads as follows:

> If you are confined as an inpatient in a hospital as defined by subdivision ten of Section 1.03 of the New York Mental Hygiene Law, we will provide coverage for up to aggregate of 20 days per person in each plan year for Active Treatment of mental, nervous, or emotional disorders or ailments, if it is medically necessary in the judgment of a participating physician, and approved by our medical director under [either the in-network and out-of-network sections of the Policy]. Active Treatment means treatment furnished in conjunction with inpatient confinement for mental, nervous, or emotional disorders or ailments that meet such standards as shall be prescribed pursuant to the regulations of the Commissioner of Mental Hygiene.

(Def. Exs.  D at HN00015-16 (§ 3(9) (in-network)), HN00035 § 12(8) (out-of-network)); E at HN00121-22, HN00141 (same).)

It is a "cardinal principle of contract construction that a document should be read to give effect to all its provisions and to render them consistent with each other." Perreca v. Gluck, 295 F.3d 215, 224 (2d Cir. 2002) (internal quotation marks and brackets removed). Here, because both the Plan and Mental Hygiene Law § 1.03(10) refer to inpatient

15

psychiatric facilities or services, there would be no need for the Plan to incorporate this statutory provision unless the intent was to include the additional characteristics identified therein. The only specific characteristics subdivision 10 requires of inpatient psychiatric facilities or services is oversight by the state office of mental health or an operating certificate issued by the commissioner of mental health. N.Y. Mental Hygiene Law § 1.03(10).  As Plaintiff himself asserts, "there is no point in adopting a statutory definition and then ignoring it." (Pl. Mem. 20.)  Thus, to give effect to the plain language of this Plan provision, it must be read as incorporating the oversight and certification requirements. This reading is further supported by the Plan's own requirement that any active treatment provided must meet "such standards as shall be prescribed pursuant to the regulations of the Commissioner of Mental Hygiene." (Def. Exs.  D at HN00015-16 (§ 3(9) (in-network)), HN00035 § 12(8) (out-of-network)); E at HN00121-22, HN00141 (same).)

Contrary to Plaintiff's argument, the fact that the Plan uses the same language with respect to both in-network and out-of-network coverage does not belie the conclusion that state oversight is required.  Under the plain language of the Plan, the phrases "in network" and "out of network" are not the equivalent of "in state" and "out of state."  Instead, in-network services are those: (1) provided by a beneficiary's chosen primary care physician; (2) provided by a participating in-network specialist; or (3)  constituting emergency care covered under section eight of the plan. (Def. Exs.  D at HN 00006; E at HN00112)  Out-of-network benefits include specified services that do not meet one of these three conditions. (Id.)  Thus, there is no conflict or contradiction created by the incorporation of the oversight requirements when the provisions are considered in the context of the contract as a whole. For example, the Plan would provide out-of-network coverage for active treatment

16

furnished by a *non-participating* mental health specialist in an inpatient facility operating pursuant to a certificate issued by the commissioner of mental health.  In contrast, to interpret the Plan as Plaintiff urges would render the references to New York's Mental Hygiene Law and relevant regulations meaningless.  See Burke v. PriceWaterHouseCoopers LLP Long Term Diability Plan, 572 F.3d 76, 81 (2d Cir. 2009)(a court must not rewrite a contractual term that is clear and unambiguous).

Finally, it is only when provisions are ambiguous that courts may look to extrinsic factors such as bargaining history or past practices to interpret ERISA-plan provisions. Sciascia v. Rochdale Village, 851 F. Supp. 2d 460, 474 (E.D.N.Y. 2012 (citing Aeronautical Indus. Dist Lodge 91 v. United Tech. Corp., 230 F.3d 569, 576 (2d Cir. 2000)); see U.S. Airways v. McCutchen, 133 S. Ct. 1537, 1549, 185 L. Ed. 2d 654 (2013) (a court may look outside the plan's written language when the words of a plan "leave gaps").  Because this Court concludes that the relevant Plan provisions are unambiguous as written, consideration of Defendant's prior benefit payments in apparent contravention of these provisions cannot be considered.  See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988) (extrinsic evidence may not be used to amend or contradict an express provision of an ERISA plan); Am. Fed. of Grain Millers v. Int'l Multifoods Corp., 116 F.3d 976, 981 (2d Cir. 1997) (extrinsic evidence could not be used to alter the meaning of unambiguous contract provision).

### IV. CONCLUSION

The unambiguous language of the Plan provides that there is mental health coverage for active treatment at inpatient facilities, including residential treatment centers for children and youth, but only when those facilities are operating under the oversight of

17

the office of mental health or pursuant to an operating certificate issued by that office's commissioner.  Because there is no dispute that Telos is not such a facility, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED;

FURTHER, that Plaintiff's Cross-Motion for Summary Judgment (Docket No. 24) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   August 30, 2014
         Buffalo, New York


                                                    /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                       Chief Judge
                                              United States District Court